(31 Misc. Rep. 308.)

### KING et al. v. BAER et al.

(Supreme Court, Special Term, New York County. April 25, 1900.)

1. TRIAL—SERVICE—ESSENTIAL PARTY—OBJECTION—TIME.
   Where failure to serve process on a defendant who was an essential party to the suit was adverted to and admitted by the other defendants early in the trial, and no suggestion made that such failure could affect the case against them, an objection made thereto for the first time in the briefs after conclusion of the trial will not be considered.

2. CREDITORS' SUIT—JUDGMENTS—EXECUTIONS—SERVICE OF PROCESS.
   Return of executions unsatisfied is sufficient to support an action by judgment creditors to set aside an assignment of the judgment debtors, and reach assets fraudulently diverted, though the judgments on which such executions were based were obtained without service of summons on one of such defendants.

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS—FRAUD.
   Where it appeared that shortly before the assignment of a firm there was a sudden material increase of weekly withdrawals by the partners, and a further withdrawal of a large sum by each partner about six weeks before failure, when they testified that the firm was solvent; that the capital involved was small, but at the time of failure the assets were $20,000 short, with no reasonable explanation therefor; that during the period just before failure payments were charged to labor seven times

greater than during a like period the year before, and could not have been so applied,—such assignment should be set aside for fraud.

4. SAME—PAYMENT OF LOAN.

Where fraudulent diversion of funds of an insolvent firm in purported settlement of fictitious loans is alleged in an action by creditors to recover diverted assets, and the proof shows the loans made during a period commencing two years before failure, and is not sufficient to show knowledge of the firm's insolvency when repayment was made, or any scheme entered into to defraud creditors of the firm, or a manner of dealing with the funds inconsistent with an honest purpose, a recovery of such funds cannot be had.

5. SAME—FICTITIOUS LOAN.

A brother of a member of a firm made a loan of $2,500 to the firm, by check, two months before its failure, which was repaid by check within a month of the failure. The members of the firm had sufficient funds to furnish the amount to make the loan, and the necessity for the loan to the firm was improbable. The brother was in a small retail business, with small bank balance, which increased shortly before the loan until sufficient to make the loan, and, after repayment, was soon brought to its usual level. The brother testified that he banked the money in order to have evidence of the loan; that it was furnished from prior business earnings kept by him in a safe, because afraid of banks; and that the moneys repaid were withdrawn for such reason. *Held*, that the apparent loan was fraudulent as to creditors, and the amount paid by the firm could be recovered in an action against such brother to recover moneys fraudulently diverted.

Action by Bennett J. King and others against Adolph Baer and others. Judgment for plaintiffs against defendants Adolph Baer and Max Baer, and complaint dismissed as to defendant Levy.

Blumenstiel & Hirsch (A. Blumenstiel, of counsel), for plaintiffs.

Lachman & Goldsmith (William N. Cohen and Theodore Baumeister, of counsel), for defendants Levy and Max Baer.

Theodore Baumeister, for defendant Adolph Baer.

Platzek & Stroock (M. Warley Platzek, of counsel), for defendant Adler, assignee.

GIEGERICH, J. The action is brought by judgment creditors to set aside a general assignment for the benefit of creditors made by the firm of Baer & Schwartz, of their co-partnership property, to the defendant Jacob Adler, on the 28th day of December, 1897, and to reach assets alleged to have been fraudulently diverted. It is insisted by the defendants that the plaintiffs' creditors have no standing to maintain this action, because their judgments against the assignors were obtained after service of the summons upon one only of the two defendants; and it is also urged that, for the failure of service of process upon the defendant Schwartz in the present action, a judgment setting aside the assignment cannot be rendered. The last contention proceeds upon the theory that this defendant is an essential party to the suit; but the fact that he was not served was adverted to and admitted early in the course of the trial, without any suggestion by the defendants that the omission could affect the case as against them. Had the question been raised, any possible difficulty could have been obviated by a direction to bring in the party (Kaliske v. Weil [Com. Pl.] 33 N. Y. Supp. 413); but the point is touched upon for the first time in the briefs, after the con-

clusion of a protracted trial, and hence, not being presented by
"timely objection" (see Sherman v. Parish, 53 N. Y. 483; Kinnan
v. Railroad Co., 1 Misc. Rep. 457, 21 N. Y. Supp. 789, affirmed in 140
N. Y. 183, 35 N. E. 498), is not to be successfully insisted upon.

The objection founded upon the nonservice upon one of the part-
ners in the actions at law is without merit, the return of executions
unsatisfied, under the judgments thus obtained, being sufficient to sup-
port an action of this character by the judgment creditors to set
aside the firm assignment and to reach firm assets. Bank v. Mor-
ton, 67 N. Y. 199; Hiler v. Hetterick, 5 Daly, 33.

As to the merits, I must conclude that the assignment should be
set aside for fraud, as evidenced by the acts of the assignors in with-
drawing substantial sums from the assets at a time when, by a
hardly disputable inference, the insolvency was contemplated. The
circumstances compel the conclusion that the sudden and material
increase of the weekly withdrawals by each partner, and the fur-
ther withdrawal by Baer of $1,500, and by Schwartz of $1,640, within
about six weeks of the failure, were not consistent with the usual
and orderly prosecution of the business, and that the firm was not
in a solvent condition at the time. According to these partners,
they were solvent until within six weeks of the assignment, made,
as above noted, on December 28, 1897; but the fact that the as-
sets were short some $20,000 on that date, without any reasonable
explanation in view of the small capital involved, leads to the find-
ing that the firm was, to their knowledge, in no position to justify
the withdrawals referred to. Again, payments were charged to
labor, during this late period, about seven times greater than corre-
sponding expenses of the previous year; and, from a comparison
of the amount of goods sold during the year with the cost price, in
view of the partner's (Baer's) testimony that no goods were sold
at a loss, it is apparent that the sums charged to labor could not
have been so applied. Therefore, the conclusion is irresistible that
the labor account was a cover for very substantial withdrawals.

Leaving the matter of the assignment, a question remains as to
the right of the plaintiffs, upon the facts, to reach funds paid over
by the firm to the defendants Levy and Max Baer in purported set-
tlement of loans made by those parties. It is urged for the plaintiffs
that these loans were fictitious, that the money loaned was first fur-
nished by the firm, and that the payments were received by the
ostensible lenders merely for the purpose of turning the amounts
back to the partners, or for their benefit. With regard to the Levy
transaction, I think that the proof is insufficient to disclose fraud.
The loans were made during a period commencing some two years
before the failure, and it is not to be inferred that a fraud upon
creditors was contemplated at any such remote period. I must as-
sume, therefore, that the moneys loaned were in fact the funds of
the lender, Levy, and there is not sufficient evidence to support a
finding that, when accepting payment, he knew of the insolvent con-
dition of the firm, or entered into a scheme to defraud the firm's
creditors. The manner in which he dealt with the funds thus re-
ceived presumptively for a valid debt is not inconsistent with the
honesty of his purpose. As to the payment to Max Baer, however,

a different situation is disclosed. This loan was $2,500, made on the 20th and 28th days of October, 1897,—two months before the assignment,—and repaid on the 3d day of December of the same year, and, while the payments and repayments were by check, and the firm books made the transaction appear regular, the circumstances, as brought out by the evidence, cannot well be harmonized with an honest course of dealing, if due regard be had to the ordinary probabilities of the case. The disposition of these partners to cover their assets before the failure is a fact which is impressed upon the mind; and that they had funds, at the time of this loan, sufficient to furnish the lender with the requisite amount, is a necessary conclusion from the facts as to the state of their relation to their "labor" accounts. The availability of this labor fund negatives the probability that they really required a loan at the time; but, apart from this, the books of the firm import the fact that no expected demand called for their resorting to their credit for funds at the date when the loan, so called, was received. The transaction thus discloses the borrowers' standing as more than questionable, and a reason for the loan cannot well be founded in the surmise that they intended to defraud the lender, since repayment was made by them from the funds in hand shortly before their failure. Under these circumstances, the only apparent purpose of the firm being to cover a withdrawal of assets, something more than the mere forms of regularity should be looked for to bear out the bona fides of the purported lender, who was the brother of one of the partners. It appears that this individual was a retail butcher, with a small business, and that his bank deposits generally were such as to result in but a slight standing balance. Shortly before this loan was made by him to the firm, he made cash deposits in amounts of four or five hundred dollars at a time, and thus his account became good for the two checks which he drew in favor of the firm. Succeeding the deposit of the firm's check in repayment, his account with the bank was again brought to its accustomed level by personal drafts. His explanation was that he had no confidence in banks, and that his large deposits, before the loan, were furnished from moneys earned at a past period in his business, and kept in his safe; and that upon depositing the firm's check he withdrew the money, and put the greater part back in the safe, where it had remained until the trial (some two years afterwards). When asked why he had thus prepared his bank balance, he stated that his brother had told him of the firm's intention to ask for a loan, and in explanation of his choice in passing the money through the bank rather than by a delivery of the cash, his testimony was that he wished to have evidence that the loan was made. I think that the circumstances surrounding this transaction are so consistent with a fraudulent intent, and so inconsistent with honest dealing, as to necessitate a finding that the apparent loan was no loan, and that the defendant Max Baer came into possession of the firm assets merely as an assistant in the endeavor to secrete them from creditors. It is well-nigh inconceivable that a person such as this defendant, with fairly developed business instincts, would, indeed, refrain for years from making any investment of a sum which, to him, was

of substantial proportions, preferring to have the fund in his safe. That he did so is, of course, possible, but the fact is so extremely improbable as to be out of all harmony with the situation; and the care with which he endeavored to guard against an attack for fraud is a guide to the inference that fraud was at work. Bridger v. Goldsmith, 143 N. Y. 424, 428, 38 N. E. 458. It follows from these views that there should be judgment for the plaintiffs declaring the assignment void, and for an accounting by the assignee and by the defendant Max Baer to a receiver to be appointed, with costs against defendants Adolph Baer and Max Baer, and that the complaint should be dismissed, without costs, as to the defendant Levy.